STATE OF NORTH CAROLINA v. DIONNE TERRELL PHILLIPS

No. COA02-1509

(Filed 7 October 2003)

**Search and Seizure— anticipatory search warrant—tripartite test—motion to suppress drugs**

The trial court did not err in a trafficking in cocaine and maintaining a dwelling for the keeping of a controlled substance case by denying defendant's motion to suppress evidence seized pursuant to an anticipatory search warrant, because the warrant met the tripartite test including: (1) the triggering event for execution of the warrant was the successful controlled delivery of a Federal Express package to the listed address, and a magistrate is not required to set forth the precise time following the occurrence of the triggering event when an officer must execute the warrant; (2) the warrant precluded delegation of power to the executing officer to find probable cause and ensured the contraband was present at the time of the warrant's execution when the execution of the warrant was contingent on delivery of the package to the listed address; and (3) it is undisputed that the package was delivered and taken into the listed address prior to the execution of the search warrant, and defendant failed to cite any authority for his proposition that a valid and correct address not contained in a city directory would be deficient as a means of establishing with reasonable certainty the premises to be searched.

Appeal by defendant from judgment entered 5 June 2002 by Judge Henry E. Frye, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 11 September 2003.

*Attorney General Roy Cooper, by Assistant Attorney General David J. Adinolfi, II, for the State.*

*J. Clark Fischer, for defendant-appellant.*

CALABRIA, Judge.

Dionne Terrell Phillips ("defendant") appeals the trial court's denial of a motion to suppress evidence seized pursuant to an anticipatory search warrant. Because we find no constitutional infirmity, we affirm.

On the morning of 23 January 2002, James Anders ("Detective Anders") was working with the Guilford County Sheriff's Department's interdiction drug unit at a Federal Express facility in Greensboro. Detective Anders, a twenty-six-year veteran of the sheriff's department with over nineteen years' experience in the vice and narcotics division, scanned packages coming into the area by means of parcel company services to isolate those containing narcotics.

When a parcel from California exhibited several characteristics indicating the possible presence of drugs, Detective Anders set the parcel aside for inspection by a K-9 unit. When the K-9 unit indicated the presence of narcotics in the package, a search warrant was obtained and executed. Detective Anders discovered the package contained approximately 1,000 grams of crack cocaine.

Detective Anders obtained a second search warrant for the address to which the package was to be delivered based on the discovery of the narcotics and arranged a controlled delivery of the re-sealed package. The package itself was addressed to Sonya Moore at 1412 Hamlet Place, Greensboro, North Carolina. The pertinent part of the search warrant stated:

> On this date, this applicant and other officers will attempt to make a controlled delivery of the Federal Express Package addressed to Sonya Moore, 1412 Hamlet Pl., Greensboro, N.C. If this Federal Express Package is delivered to said residence within the forty eight hours of the Issuance of this Warrant, this search warrant will be executed shortly therafter (sic).

The controlled delivery took place that same day shortly before 11 o'clock in the morning. Since there was no answer and the label indicated a signature release, allowing the package to be left at the destination if no one was home to sign for its receipt, the officer attempting the delivery left the package on the porch. A few minutes later, defendant opened the front door from the inside of the house and retrieved the package. Approximately twenty minutes later, Detective Anders executed the search warrant and forced entry into defendant's residence when no one answered the door. Detective Anders found defendant in the bathroom, using his body to prevent entry and flushing crack cocaine down the commode.

Defendant was arrested and subsequently indicted for trafficking by possession of 400 grams or more of cocaine and maintaining a dwelling for the purpose of keeping controlled substances.

**STATE v. PHILLIPS**

[160 N.C. App. 549 (2003)]

Defendant moved to suppress the evidence seized pursuant to the anticipatory search warrant. The trial court denied defendant's motion by order entered 29 May 2002 after concluding the description of the premises to be searched in the anticipatory warrant was adequate and it was appropriately drafted. Defendant was found guilty of trafficking by possessing 400 grams or more of cocaine and knowingly maintaining a dwelling for the keeping of a controlled substance. The trial court sentenced defendant to 175 months to 219 months' imprisonment. Defendant appeals.

On appeal, defendant asserts the trial court erred in denying his motion to suppress because the anticipatory search warrant was facially invalid and failed to comply with the requirements of this Court's holding in *State v. Smith*, 124 N.C. App. 565, 478 S.E.2d 237 (1996).

Anticipatory search warrants are "issued in advance of the receipt of particular property at the premises designated in the warrant . . . ." *U.S. v. Ricciardelli*, 998 F.2d 8, 10 (1st Cir. 1993). Issuance of an anticipatory warrant is "based on a showing of future probable cause to believe that an item will be at·a specific location at a particular time in the near future." Norma Rotunno, Annotation, *Validity of Anticipatory Search Warrants—State Cases*, 67 A.L.R.5th 361, 374 (1999). In *Smith*, this Court noted our Constitution afforded greater protection for anticipatory search warrant challenges than its federal counterpart, and we examined our Constitution and general rules governing the issuance of a search warrant. *Smith*, 124 N.C. App. at 570, 478 S.E.2d at 240. We concluded that anticipatory search warrants did not violate constitutional strictures so long as it satisfied the following tripartite test:

> (1) The anticipatory warrant must set out, on its face, explicit, clear, and narrowly drawn triggering events which must occur before execution may take place; (2) Those triggering events, from which probable cause arises, must be (a) ascertainable, and (b) preordained, meaning that the property is on a sure and irreversible course to its destination; and finally, (3) No search may occur unless and until the property does, in fact, arrive at that destination.

*Smith*, 124 N.C. App. at 577, 478 S.E.2d at 245. These requirements secure the privacy interests accorded by our Constitution, minimize the potential for abuse in warrants conditioned on what may occur in the future, and ensure that the magistrate fulfills his proper role in

determining whether probable cause exists. *Smith*, 124 N.C. App. at 572-73, 478 S.E.2d at 241-42.

I. Triggering Event

The first prong requires that the face of the warrant set out "explicit, clear, and narrowly drawn triggering events" permitting execution of the warrant. *Smith*, 124 N.C. App. at 577, 478 S.E.2d at 245. "The warrant must minimize the officer's discretion in deciding whether or not the 'triggering event' has occurred to 'almost ministerial proportions.'" *Smith*, 124 N.C. App. at 573, 478 S.E.2d at 242 (quoting *Ricciardelli*, 998 F.2d at 12). In the instant case, Detective Anders had no discretion to decide whether or not the triggering event had occurred. On the contrary, the triggering event was the successful controlled delivery of the Federal Express package to the listed address. Once delivery occurred, the warrant could be executed. Accordingly, we hold the trial court correctly found the first prong of *Smith* was met.

Defendant nevertheless asserts the warrant in the instant case failed to appropriately limit the time during which either the triggering event for probable cause or the execution of the warrant would occur. Specifically, defendant contends forty-eight hours is too long for law enforcement to be entitled to execute a search warrant and the phrase "shortly thereafter" regarding the timing of execution after delivery is ambiguous. We disagree.

We note defendant asserts a requirement distinct from the tripartite test set out in *Smith*. *Smith* required, in relevant part, only that the execution of the search warrant succeed the triggering event and that the triggering event be appropriately drawn. By way of contrast, defendant's argument concerns post-issuance timing of the warrant's triggering event and execution.

The central concern in *Smith* was whether the officer executing the warrant could create the circumstances justifying its execution, and in so doing, violate one's privacy rights. *Smith*, 124 N.C. App. at 572, 478 S.E.2d at 241. When the warrant is executed after an appropriately drawn triggering event occurs, probable cause, justifying the invasion of privacy, has been established by a neutral and detached magistrate.

Addressing defendant's arguments in the instant case, the forty-eight hour window to which defendant objects merely provided when the warrant would expire by its own terms. The language of the war-

rant clearly stated "[o]n this date, . . . officers will attempt to make a controlled delivery" and required execution "shortly thereafter." This designation was reasonably precise in specifying the time frame in which execution of the warrant was to occur. Given the variety of circumstances which can be presented at the time a warrant is executed, we cannot agree with defendant that a magistrate must set forth the precise time following the occurrence of the triggering event when an officer must execute the warrant.

II. Sure and Irreversible Course to Destination

The second requirement adopted by *Smith* is the so-called "sure and irreversible course to destination" rule. *Smith*, 124 N.C. App. at 572-73, 478 S.E.2d at 242 (citing *Ricciardelli*, 998 F.2d at 12-13). Stated succinctly, "contraband must be on a sure, irreversible course to the situs of the intended search, and any future search 'of the destination must be made *expressly* contingent upon the contraband's arrival there.' " *Smith*, 124 N.C. App. at 573, 478 S.E.2d at 242 (quoting *Ricciardelli*, 998 F.2d at 12). This requirement prevents probable cause determinations from passing from the magistrate to the officer executing the warrant and ensures "the contraband, though not yet at the location of the intended search, will almost certainly be there at the time of the search." *Id.*

In the instant case, the package was addressed and sent through Federal Express. It was intercepted, and a controlled delivery to the listed address was undertaken. Anticipatory warrants executed after a controlled delivery of a package sent to a listed address by mail or a parcel service have been overwhelmingly approved. Norma Rotunno, Annotation, *Validity of Anticipatory Search Warrants—State Cases*, 67 A.L.R.5th 361, 376 (1999). Moreover, by making execution of the warrant contingent on delivery of the package to the listed address, the warrant precluded delegation of power to the executing officer to find probable cause and ensured the contraband was present at the time of the warrant's execution. Accordingly, we hold the trial court correctly found the second prong of *Smith* was met.

III. Time of Search

Finally, the third prong requires that any search must await the arrival of the contraband to the destination. *Smith*, 124 N.C. App. at 577, 478 S.E.2d at 245. It is undisputed that the package was delivered and taken into the listed address prior to the execution of the search warrant. Nothing more is required by this prong of *Smith*.

BATTS v. BATTS

[160 N.C. App. 554 (2003)]

Defendant asserts the warrant application provided insufficient information as to the premises to be searched because it listed an address not found in the Greensboro City Directory. Defendant concedes that, relevant to this case, a search warrant need only contain a "designation sufficient to establish with reasonable certainty the premises . . . to be searched" to satisfy N.C. Gen. Stat. § 15A-246(4) (2001). Defendant cites no authority for, nor can we accept, the proposition that a valid and correct address, regardless of whether it is contained in a city directory, would be deficient as a means of establishing with "reasonable certainty the premises . . . to be searched." We have carefully considered defendant's remaining arguments and find them to be without merit.

Affirmed.

Judges McGEE and HUNTER concur.